UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-mj-40-DLM

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  )  Plaintiff,  )  )  v.  )  )  NEKIMA VALDEZ LEVY- ARMSTRONG a/k/a "Nekima Valdez Levy-Pounds," and CHAUNTYLL LOUISA ALLEN  )  )  )  )  )  )  )  Defendants. | **MOTION FOR EMERGENCY STAY AND FOR REVIEW AND REVOCATION OF RELEASE ORDER** |

The United States of America, by and through its attorneys, Robert Keenan, Senior Counsel, Civil Rights Division, U.S. Department of Justice and Orlando Sonza, Counsel, Civil Rights Division, U.S. Department of Justice, pursuant to 18 U.S.C. § 3145, hereby moves the Court (1) to revoke the defendant's pretrial release, reopen the detention hearing, and to detain the defendant or, in the alternative, (2) to amend the defendant's conditions of release to include a $10,000 appearance bond to be signed by the defendants.

This motion is filed in support of the single-page application form that the Government filed earlier this afternoon. It is not intended as a separate motion. We submit it for the Court's assistance and because counsel are informed that this type of form is more consistent with local practice within this District for motions of this type. (The single-page form is used in another district, but it does not appear to be an AO-issued form.)

## PROCEDURAL BACKGROUND

On January 22, 2026, defendants Nekima Valdez Levy-Armstrong ("Armstrong") and Chauntyll Louisa Allen ("Allen") were charged by criminal complaint in this case with 18 U.S.C. § 241 (Conspiracy Against Rights Secured by Federal Law, namely, the free exercise of religion at a place of religious worship secured by the FACE Act, 18 U.S.C. § 248(a)(2)).

On January 22, 2026, the defendants were arrested. On January 22, 2026, the defendants made their initial appearances before The Honorable Magistrate Judge Douglas L. Micko in the District of Minnesota.

The government asked the magistrate judge to detain the defendants. The magistrate judge denied the government's detention motion. The government subsequently asked for a $10,000 appearance bond as to each defendant. The magistrate judge denied the government's bond motion. The government filed a motion requesting that the magistrate judge stay the release of the defendant on January 22, 2026, so that the government could appeal the release order to this Court. That motion is currently pending before the magistrate judge. The request for a stay and appeal of release to this Court follows.

## LEGAL STANDARDS

Title 18, United States Code, Section 3142(f)(1-2) identifies when the Court must hold a detention hearing, which includes and is not limited to cases involving crimes of violence. See 18 U.S.C. §§ 3142(f)(1)(A)&(E).  In such cases, and others so enumerated, there are rebuttable presumptions applicable to the detention determination.  See 18

U.S.C. §§ 3142(f)(2-3).  In other words, there are cases where it is presumed that no conditions of release will assure a defendant's appearance, the safety of the community, or both.

In defendant's case, 18 U.S.C. 3142(e)(3)(E) establishes a rebuttable presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of other people and the community.

In a presumption case, "a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight."  Abad, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).  In situations where a defendant actually meets his burden of production as to these two factors, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court."  Id.

Even assuming that a defendant rebuts the presumption, the United States Code specifies four additional factors for the court to consider in its analysis of whether any condition or combination of conditions would assure a defendant's appearance before the Court and the safety of the community.  Section 3142(g) provides that the Court "shall … take into account the available information" regarding: the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; the weight of the evidence against the [defendant]; the history and characteristics of the [defendant], including— the

3

person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g) (emphasis added).

Pretrial detention may be ordered either upon (1) a clear and convincing showing that release will result in a danger to the community or (2) a showing by a preponderance of the evidence that release will result in a serious risk of flight.  See Abad, 350 F.3d at 797; United States v. Sazenski, 806 F.2d 846, 848 (8th Cir. 1986).

Where a magistrate judge has ordered the release of a defendant, Title 18, United States Code, Section 3142(c)(1)(B) sets forth a number of specific release conditions that a magistrate judge may impose on a defendant "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  In *United States v. Salerno*, 481 U.S. 739, 749 (1987), the Supreme Court noted the breadth of legitimate interests Congress could pursue in restricting pretrial release, explaining that "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling."  The Supreme Court has further recognized that while release conditions should be "reasonably calculated to fulfill" the

government's purpose, *Stack v. Boyle*, 342 U.S. 1, 5 (1951), the "only arguable substantive limitation . . . is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S. at 754. Where a magistrate judge has ordered release of a defendant upon conditions, Title 18, United States Code, Section 3145(a) authorizes the government to file "with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release[.]" 18 U.S.C. § 3145(a)(1). The statute states that such motions "shall be determined promptly." 18 U.S.C. § 3145(a).

A magistrate judge's detention decision is subject to de novo review by the district court judge. See *United States v. Maull*, 773 F.2d 1479, 1485 (8th Cir. 1985). In its discretion, this Court may proceed to rehear the evidence to support detention presented to the magistrate judge and may consider additional evidence or arguments not raised previously. *Id*. at 484. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, considering the rebuttable presumption of detention applicable to the defendant.

## FACTS AND ARGUMENT

Pursuant to 18 U.S.C. § 3142(e)(3)(E), this Court must apply a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community if the defendant is released. In this case, the defendant has not—and cannot—rebut that presumption.

The 3142(g) factors weigh heavily in favor of the defendant's detention, particularly the nature and circumstances of the instant offense (detention factor 1) and the weight of the evidence against the defendant (detention factor 2).

A. <u>Facts Relevant to Defendant Armstrong</u>

On the evening of January 21, 2026, federal agents conducted physical surveillance and real-time location monitoring of defendant Armstrong pursuant to court-authorized warrants.

At approximately 7:10 p.m., Armstrong's vehicle was started remotely. At approximately 7:13 p.m., Armstrong left the Aloft Hotel in downtown Minneapolis, MN, entered the vehicle, and departed the hotel at approximately 7:15 p.m. Agents observed Armstrong drive directly to 1315 North 12th Avenue, Minneapolis, arriving at approximately 7:22 p.m.

Upon arrival, Armstrong parked in the parking lot of the residence with the engine running and remained in the vehicle for approximately five minutes. During this period, Armstrong appeared to be alone in the vehicle. At approximately 7:27 p.m., Armstrong departed the area without exiting the vehicle.

After leaving the residence, Armstrong drove along West River Parkway, during which agents observed her commit multiple traffic violations, including making rolling stops through posted stop signs. At approximately 7:45 p.m., Armstrong returned to the Aloft Hotel and was observed driving the wrong way down the hotel alley before re-entering the hotel alone.

Later that evening, beginning at approximately 11:20 p.m., agents confirmed through hotel records that Armstrong had booked three separate hotel rooms at the Aloft Hotel despite being observed earlier entering and exiting the hotel alone.

Federal agents confirmed Armstrong's presence at the hotel by placing her cellphone within the hotel's radius. Agents from Homeland Security Investigations ("HSI") secured adjacent rooms to conduct surveillance.

Between approximately 11:52 p.m. and 2:04 a.m., agents observed three unidentified adult females moving between Rooms 327 and 329 with suitcases and travel bags, indicating preparation for departure. Agents observed repeated movement of luggage between rooms, consistent with imminent travel. At approximately 8:00 a.m., Armstrong was arrested by agents at the Aloft Hotel.

B. <u>Argument as to Armstrong — Risk of Flight and Obstruction</u>

Armstrong's conduct demonstrates a substantial risk of flight and evasion, warranting detention or significantly heightened release conditions.

First, Armstrong engaged in counter-surveillance behavior and suspicious travel shortly after learning of law enforcement interest in the underlying investigation. Her brief stop at a residential address without exiting the vehicle, followed by immediate departure, suggests reconnaissance or coordination rather than innocent travel.

Second, Armstrong's multiple traffic violations, including driving the wrong way down an alley, demonstrate reckless behavior and disregard for legal constraints while under surveillance.

Third—and most significantly—Armstrong's decision to book three hotel rooms, coupled with late-night movement of suitcases and travel bags among multiple individuals, strongly indicates preparations to flee or relocate. Courts routinely recognize such conduct as evidence of flight risk, particularly when undertaken after the defendant becomes aware of an investigation.

Finally, Armstrong's leadership role in the charged conspiracy heightens the risk that she could coordinate with co-conspirators, obstruct justice, or evade court supervision if released without adequate safeguards.

For these reasons, the magistrate judge's release order does not adequately mitigate the risks presented, and detention—or, at minimum, substantial additional conditions—is warranted.

C. <u>Facts Relevant to Defendant Allen</u>

On Tuesday, January 20, 2026, federal agents conducted surveillance related to Allen.

At approximately 7:55 p.m., law enforcement observed two adult Black females believed to be Allen and Allen's significant other arrive at a residence on Sherburne Avenue in a white SUV and enter the residence carrying personal items. Agents believed the vehicle to be Allen's based on the license plate observed. During this period, agents observed the two individuals exiting the residence carrying duffle bags, further suggesting movement of belongings consistent with temporary lodging or relocation.

At approximately 8:20 p.m., Special Agent Cholewa reported that agents had lost visual contact with the original vehicle and had unintentionally followed a similar-looking vehicle.

The sequence of events nonetheless demonstrates that Allen was associated with late-evening movement of luggage and vehicles, a factor relevant to assessing risk of non-appearance.

D. <u>Argument as to Allen — Risk of Non-Appearance</u>

Allen's conduct raises legitimate concerns regarding risk of flight. In addition to Allen having a history of non-appearance in court, the observed movement of duffle bags during late evening hours, combined with vehicle confusion and loss of surveillance, supports the inference that Allen may have been changing locations or preparing for travel during a critical phase of the investigation.

Given Allen's alleged role in the charged conspiracy and the seriousness of the offense, conditions of release must be sufficient to ensure appearance and prevent coordination with co-conspirators.

## **CONCLUSION**

The government respectfully requests that the Court revoke the defendant's pretrial release, reopen the detention hearing, and detain the defendant because no conditions will reasonably assure the safety of the community and the defendant's appearance before the

/ / /

/ / /

/ / /

/ / /

/ / /

Court.  Alternatively, the government requests that the Court amend the defendant's release conditions to impose a $10,000 appearance bond to be signed by the defendants.

Dated:  January 22, 2026                    Respectfully Submitted,

                                                          HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

ROBERT KEENAN
Acting Dep. Asst. Attorney General
Civil Rights Division

*/s/ Orlando Sonza*
_____
ORLANDO SONZA
Counsel
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C.   20530
E-Mail:  Robert.Keenan@usdoj.gov
Telephone:  (202) 305-2566